**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

TONY ANTWAIN BURCH,        )
                                 )
               Petitioner,    )
                                 )
              v.             )     1:13CV10
                                 )
JUDY BRANDON,            )
                                 )
               Respondent.   )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.) On April 15, 2010, in the Superior Court of Guilford County, a jury found Petitioner guilty of three counts of statutory rape/sexual offense, two counts of indecent liberties with a child, and two counts of sexual offense by a substitute parent in cases 08 CRS 111914 and 111916 through 111921. (Docket Entry 1, ¶¶ 1, 2, 4-6; see also Docket Entry 5-3 at 43-49.)[1] The trial court consolidated the offenses into three Class B1 felonies and sentenced Petitioner in the presumptive range to three consecutive terms of 288 to 355 months' imprisonment. (Docket Entry 1, ¶ 3; see also Docket Entry 5-3 at 52-57.)

With the aid of appellate counsel, Petitioner appealed his convictions (Docket Entry 1, ¶¶ 8, 9(a)-(f); see also Docket Entries 5-2, 5-3, 5-4), and the North Carolina Court of Appeals affirmed, State v. Burch, 215 N.C. App. 391 (table), 716 S.E.2d 88

---

[1] For attachments to Respondent's memorandum in support of her instant Motion for Summary Judgment, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

(table), No. COA-10-1199, 2011 WL 3891031 (Sept. 6, 2011) (unpublished). Petitioner thereafter submitted a certiorari petition to the North Carolina Supreme Court (see Docket Entry 1, ¶ 9(g)), which that court denied, State v. Burch, 366 N.C. 393, 732 S.E.2d 483 (2012). Petitioner did not then petition the United States Supreme Court for a writ of certiorari. (Docket Entry 1, ¶ 9(h).)

While his certiorari petition remained pending before the North Carolina Supreme Court, Petitioner filed a motion for appropriate relief ("MAR") with the state trial court (Docket Entry 1-2; see also Docket Entry 1, ¶ 11(a)),[2] which that court denied (Docket Entry 5-6 at 2; see also Docket Entry 1, ¶ 11(a)(7), (8)). Petitioner sought review of his MAR's denial by filing a certiorari petition in the North Carolina Court of Appeals (Docket Entry 5-7; see also Docket Entry 1, ¶ 11(b)), which that court denied (Docket Entry 5-9; see also Docket Entry 1, ¶ 11(b)(7)(8)).

Petitioner subsequently submitted his instant Petition to this Court. (Docket Entry 1.) Respondent moved for summary judgment on the merits (Docket Entry 4) and Petitioner filed responsive documents in opposition (Docket Entries 9, 12), along with a "Request and Motion to Add An Exhibit in Support of Motion in Opposition to Respondent's Motion for Summary Judgment" (Docket Entry 13), which the undersigned granted (see Text Order dated March 31, 2015).

---

[2] For attachments to the Petition or other portions lacking paragraph numbers, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

## Facts

The facts of the case, as set out in the North Carolina Court of Appeals' opinion affirming Petitioner's convictions, are as follows:

> The State's evidence tended to show that in early 2008, Kit,[1] a fourteen-year-old girl, lived with defendant and his wife ("the Burches"). Defendant performed oral sex on Kit and had sex with her on multiple occasions. In November of 2008, Mary, a fifteen-year-old foster child, began living with the Burches. Defendant performed oral sex on Mary, and in December of 2008, defendant went into Mary's bedroom and performed oral sex on her, had her perform oral sex on him, and had vaginal intercourse with her; afterwards, defendant used a washcloth to wipe them both. The next day Mary reported the incident to her school guidance counselor. Mary was examined by a sexual assault nurse examiner. The nurse found a tear around Mary's vagina, and the nurse determined that "the physical findings from [the] examination . . . [were] supportive of [Mary's] allegations of sexual assault" and Mary "demonstrated symptoms of rape that's [sic] consistent with other similarly situated rape or sexual assault victim[s.]" The washcloth defendant had used to wipe both Mary and himself contained DNA from both defendant's semen and Mary.
>
> FOOTNOTES
>
> [1] Pseudonyms will be used to protect the identities of the minors in this case.

Burch, 2011 WL 3891031, at *1-2.

## Claims

Petitioner raises four grounds for relief in his Petition: (1) he received ineffective assistance of trial counsel in that counsel "made errors . . . which fell below an objective standard of reasonableness and prejudiced the Petitioner, thus denying him a fundamentally fair trial in light of the cumulative[] effect of such errors" (Docket Entry 1 at 5-10); (2) Petitioner's trial

"counsel failed to conduct an adequate pre-trial investigation and to properly prepare for trial" in violation of the Sixth and Fourteenth Amendments (id. at 11, 13); (3) the trial court violated the Sixth and Fourteenth Amendments by denying Petitioner "his rights to confront and cross-examine witnesses against him" (id. at 14, 16-17); and (4) Petitioner received ineffective assistance of appellate counsel in that counsel "fail[ed] to raise a claim of trial counsel's ineffectiveness . . . [which] denied Petitioner the right to have the cumula[tive] effect of such errors reviewed on direct appeal" (id. at 18).

## Habeas Standards

The Court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, "[b]efore [the] [C]ourt may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to [this] [C]ourt in a habeas petition. The exhaustion doctrine . . . is now codified at 28 U.S.C. § 2254(b)(1)." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see also 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, expressly waives the requirement.").

**Discussion**

I.  Grounds One and Two[3]

Petitioner maintains that his trial counsel provided constitutionally deficient performance in a multitude of ways. (Docket Entry 1 at 5-13; <u>see also</u> Docket Entry 12 at 3-22.)  More specifically, he alleges that his trial counsel (1) failed to object to the "variance" between the indictments and jury instructions for the crime of "sexual offense - parental role," which alleged "vaginal intercourse," and the corresponding verdict forms, which reflected "sex offense" (Docket Entry 1 at 6); (2) failed to object to the "variance" between the indictments for "statutory rape" and the corresponding verdict forms, which included both "statutory rape" and "sex offense" (<u>id.</u>); (3) failed to object to "prejudicially damaging hearsay testimony" by a social worker that one of the victims had informed the social worker that Petitioner's son had told the victim that he had overheard Petitioner having sex one night with another victim (<u>id.</u>); (4) failed to object to "damaging" testimony by the social worker that Petitioner's son had informed the social worker that he had overheard Petitioner having sex with a juvenile (<u>id.</u> at 6-7); (5) failed to object to the social worker's hearsay testimony that Petitioner's son had informed her that one of the victims had informed his aunt that Petitioner had raped her (<u>id.</u> at 7); (6)

---

[3] Petitioner's second ground essentially reiterates (and expands upon) one of the claims of ineffective assistance alleged in his first ground.  (<u>Compare</u> Docket Entry 1 at 10, <u>with</u> <u>id.</u> at 11, 13.)  Accordingly, the Court should analyze Grounds One and Two together.

failed to object to the social worker's "prejudicial" testimony that Petitioner's son knew that one of the victims had told his aunt that Petitioner had raped her "because that was why the [victim] was being punished" (id.); (7) failed to object to a Greensboro Police Department investigator's "prejudicial" testimony that Petitioner's son had informed him that he overheard Petitioner having sex with one of the victims (id. at 7-8); (8) failed to object to the investigator's "rank hearsay" testimony that one of the victims told him that a "lot of people" had told her about Petitioner (id. at 8); (9) failed to object to the investigator's impermissible opinion testimony that a victim told him she would believe another victim before she would believe Petitioner (id.); (10) failed to object to the "opinion" testimony of the sexual assault nurse examiner ("SANE nurse") that a patient presents herself to the SANE nurse for a certain procedure after the patient has "been raped or sexually assaulted" (id.); (11) failed to object to the opinion testimony of the SANE nurse that she asked one of the victims about the clothing she wore when "penetration" occurred (id. at 8-9); (12) failed to object to opinion testimony of the SANE nurse regarding the importance of asking a victim whether she has had anything to eat or drink because such consumption can affect the biological evidence obtained from a victim of sexual assault (id. at 9); (13) failed to object to the opinion testimony of the SANE nurse as to whether the physical findings on examination supported the victim's allegations of sexual assault (id.); (14) failed to object to the testimony of a third victim

regarding an alleged sexual contact and attempted sexual contact involving Petitioner when the state did not bring charges against Petitioner concerning that victim (id.); (15) failed to object to a victim's testimony that a third victim had "told her to be careful around the Petitioner, not to be alone with him and that the Petitioner had tried to do certain sexual things to her in the past" (id. at 9-10); (16) failed to object to a victim's "inadmissible hearsay" testimony that Petitioner's sister had told her that she knew Petitioner "was probably having sex" with the victim because Petitioner "had had sex with his sister's friends in the past" (id. at 10); (17) failed to object to the prosecutor "repeatedly" asking Petitioner's wife, during cross-examination, why the victims "would say these things about her husband if they were not true" (id.); and (18) failed to adequately challenge the state's investigation and evidence, and failed to provide an alternative explanation for the physical findings of the SANE nurse and SBI experts (id.; see also id. at 11, 13). Petitioner claims that the cumulative effect of his trial counsel's errors deprived him of a fundamentally fair trial. (Id. at 5; see also Docket Entry 12 at 3-4, 9, 10-11.) Grounds One and Two lack merit.

Although Respondent has addressed the merits of Petitioner's ineffective assistance claims against his trial counsel (see Docket Entry 5 at 3-9, 10-12), Respondent has additionally argued the procedural default of such claims (see id. at 9-10). Respondent bases that argument upon N.C. Gen. Stat. § 15A-1419(a)(3) and (b) (requiring denial of MAR claim where the defendant could have

raised such claim in a prior appeal but did not do so, absent cause and prejudice or fundamental miscarriage of justice) and the MAR court's order which denied Petitioner's parallel ineffective assistance claims because Petitioner either previously raised such claims, or could have raised them, on direct appeal. (Id. at 9; see also Docket Entry 5-6 at 2.)  Because Petitioner did not present ineffective assistance of trial counsel claims on direct appeal (see Docket Entry 1-1; Docket Entry 5-2), Respondent asserts that the MAR court must have denied such claims because Petitioner did not raise them on direct appeal, although he could have done so, i.e., on grounds of procedural default (Docket Entry 5 at 9).

In response, Petitioner "contends that in Martinez v. Ryan, [___ U.S. ___, 132 S. Ct. 1309 (2012)], [the] United States Supreme Court held, where, under state law, ineffective [assistance] of trial counsel claims must be raised in an initial review collateral proceeding, a procedural default will not bar a federal habeas court from hearing those claims, if, in the initial review collateral proceeding there was no counsel or counsel in that proceeding was ineffective."  (Docket Entry 13 at 10 (citing Martinez, 132 S. Ct. at 1315-20).)  Petitioner also asserts that "[a]n attorney's errors during an appeal on direct review may provide cause to excuse a procedural default" (id.), and, in Ground Four of his instant Petition, Petitioner has indeed alleged that his appellate counsel provided ineffective assistance by failing to raise the ineffective assistance of trial counsel claims at issue here (see Docket Entry 1 at 18.)

As an initial matter, _Martinez_ does not apply to the circumstances of the instant case. That case permits a petitioner to excuse a procedural default under certain conditions when he or she has failed to raise an ineffective assistance of trial counsel claim in the first available collateral proceeding under state law. _Martinez_, 132 S. Ct. at 1315-20. Here, Petitioner did raise all of the instant ineffective assistance of trial counsel claims in his MAR. (_See_ Docket Entry 1-2.) Thus, in order to resolve the issue of procedural default, the Court must address the question of whether such claims could have, and thus should have, been brought on direct appeal.

The MAR court procedurally barred _all_ of Petitioner's claims because such claims could have been brought on direct appeal. (Docket Entry 5-6 at 2.) The MAR court's order overreached because clearly Petitioner could not have raised his ineffective assistance of _appellate_ counsel claim on direct appeal. To complicate matters further, the North Carolina Court of Appeals has held that, "[i]n general, claims of ineffective assistance of [trial] counsel should be considered through [MARs] and not on direct appeal." _State v. Stroud_, 147 N.C. App. 549, 553 (2001); _see also_ _State v. Fair_, 354 N.C. 131, 167 (2000) (recognizing that, "because of the nature of [ineffective assistance of counsel] claims, defendants likely will not be in a position to adequately develop many IAC claims on direct appeal"). Nevertheless, "ineffective assistance of counsel claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required,

i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." State v. Thompson, 359 N.C. 77, 122-23 (2004) (citations and quotation marks omitted).

Moreover, no bright line exists separating those ineffective assistance claims which require further evidence to develop from those which do not. For example, the Court of Appeals has found ineffective assistance claims based on trial counsel's failure to object to certain matters during trial resolvable from the cold record. See, e.g., State v. Turner, ___ N.C. App. ___, ___, 765 S.E.2d 77, 83-84 (2014) (reviewing and rejecting ineffective assistance of trial counsel claim premised on counsel's failure to object to a jury instruction because such claim required no further investigation). In contrast, the Court of Appeals has also found that it could not resolve an ineffective assistance claim based on failure to object on the cold record and dismissed the claim without prejudice to allow the petitioner to re-raise the claim in a MAR. State v. James, No. COA14-36, 763 S.E.2d 338 (table), 2014 WL 3510988, at *2-5 (N.C. App. July 15, 2014) (unpublished) (finding "an issue of fact about whether [the] defendant's trial counsel made a strategic decision not to object to [an out-of-court identification]" precluded review of the defendant's ineffective assistance of trial counsel claim and dismissing claim without prejudice). Accordingly, to decide whether procedural default bars Petitioner's ineffective assistance of trial counsel claims would require this Court to speculate as to how the North Carolina Court

of Appeals would handle each of Petitioner's 18 subcontentions of ineffective assistance of trial counsel.

Rather than embark on that speculative journey turning on matters of state law, the Court should instead proceed to resolve Petitioner's instant ineffective assistance of trial counsel claims on the merits. See Lambrix v. Singletary, 520 U.S. 518, 525 (1997) (noting that procedural-bar issue need not "invariably be resolved first; only that it ordinarily should be" and that federal courts can bypass procedural matters when the merits "were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law"); Muhammad v. Secretary, Florida Dep't of Corrs., 733 F.3d 1065, 1072-73 (11th Cir. 2013) (citing Lambrix and opting not to decide "messy procedural issue" where "petition is more easily resolvable against [the petitioner] on the merits"); Fry v. Angelone, No. 98-8, 165 F.3d 18 (table), 1998 WL 746859, at *2 (4th Cir. Oct. 26, 1998) (unpublished) (relying on Lambrix to avoid interpreting "apparently contradictory . . . procedural rules because . . . the claims in question are clearly without merit").

Petitioner raises two ineffective assistance claims premised on his trial counsel's failure to object to alleged variances between certain of his indictments and the corresponding verdict forms. (Docket Entry 1 at 6; see also Docket Entry 12 at 4-8.) Petitioner first alleges that his indictments for the crime of sexual offense - parental role (and the trial court's corresponding jury instructions) concerned whether Petitioner had engaged in

"vaginal intercourse" with the victims, but that the verdict forms (and the jury's resultant guilty verdicts) reflected the issue of whether Petitioner had committed a "sex offense" against the victims. (Id.; Docket Entry 12 at 4-6; see also Docket Entry 5-3 at 21, 25 (indictments), 35-36 (jury instructions), 45, 49 (verdict forms).) According to Petitioner, that distinction holds significance, because N.C. Gen. Stat. § 14-27.1(4) defines "sexual act" as "cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse." (Docket Entry 12 at 5 (emphasis added).) Thus, Petitioner contends that he "was indicted for one crime but was convicted of another." (Id.) That contention falls short.

Petitioner's instant argument confuses the elements of the crime in question with the state's use of an abbreviated title of the crime on both the indictments and the verdict forms in question. (See Docket Entry 5-3 at 21, 25, 45, 49.) Section 14-27.7(a) criminalizes either a "sexual act" (as defined in Section 14-27.1(4)) or "vaginal intercourse" with a minor victim by an individual in a parental role. Here, both the indictments and the jury instructions make clear that the state sought to charge "vaginal intercourse" as the predicate act of the crime. (Id. at 21, 25, 35-36.) Thus, the use of the words "SEX OFFENSE" on both the indictments and verdict forms in question clearly represents an abbreviated title of the crime described in N.C. Gen. Stat. § 14-27.7(a), rather than an attempt to charge a "sexual act" other than "vaginal intercourse" as the predicate act of the crime.

Similarly, Petitioner alleges ineffective assistance based upon his trial counsel's failure to object to the variance between his indictments for the crime of statutory rape and the corresponding verdict forms, which reflect that "the jury convicted . . . Petitioner of either statutory rape or sex offense and thus, . . . Petitioner may have been denied the right to a unanimous verdict and may have been convicted of a crime for which he was not indicted." (Docket Entry 1 at 6; Docket Entry 12 at 6-8; see also Docket Entry 5-3 at 19, 22, 23 (indictments), 43, 46, 47 (verdict forms).) This "variance" claim fails for the same reason as Petitioner's first such claim.

Again, Petitioner misunderstands the distinction between the charged elements of the crime of statutory rape under N.C. Gen. Stat. § 14-27.7A(a) and the abbreviated title of that crime used by the state on the indictments and verdict forms. Section 14-27.7A(a) criminalizes either a "sexual act" (as defined in Section 14-27.1(4)) or "vaginal intercourse" with a victim aged 13, 14, or 15 by an individual six or more years older and not married to the victim. All three statutory rape indictments (and the corresponding jury instructions) make clear that the state charged "vaginal intercourse" as the predicate act of the crime of statutory rape. (Id. at 19, 22, 23, 34-35.) Given that fact, the words "STATUTORY RAPE/SEX OFFENSE" on both the indictments and verdict forms in question clearly represent an abbreviated title of the crime described in N.C. Gen. Stat. § 14-27.7A(a), rather than

an attempt to charge a "sex offense" other than "vaginal intercourse" as the predicate act of the crime.

Accordingly, Petitioner's trial counsel could not have provided ineffective assistance for failing to raise such meritless objections regarding the indictments in question. See Oken v. Corcoran, 220 F.3d 259, 269 (4th Cir. 2000) ("[C]ounsel was not constitutionally ineffective in failing to object . . . [when] it would have been futile for counsel to have done so . . . .").

Petitioner also claims that his trial counsel failed him by inadequately challenging the state's investigation and evidence, and by not providing an alternative explanation to counter the physical findings of the SANE nurse and SBI experts. (Docket Entry 1 at 10, 11, 13; see also Docket Entry 12 at 11-22.) Specifically, Petitioner faults his trial counsel for failing to investigate whether "any of the [victims] had made any allegations of rape or sexual abuse against other foster parents or any other person, and the outcome of such allegations," when "report[]s" showed that the victims had made such prior allegations and "were very sexually active prior to [the] allegations against . . . Petitioner." (Id. at 13; Docket Entry 12 at 11-14, 18.) Further, Petitioner argues that his counsel should have retained experts to counter the SANE nurse's physical findings and the SBI's DNA evidence. (Docket Entry 12 at 18-22.) According to Petitioner, "no matter[] what the investigation may have revealed, such investigation would have helped[] . . . Petitioner to make an intelligent choice of whether

or not to proceed to trial or work out a permissible plea." (Docket Entry 1 at 13.)

Such vague, speculative, and conclusory allegations fail to state a claim for habeas relief as a matter of law. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrogation on other grounds recognized, Yeatts v. Angelone, 166 F.3d 255, 266 n.4 (4th Cir. 1999). Here, given that consent to the alleged sexual activity does not constitute a defense to the crimes in question, Petitioner has not shown how the prior sexual activities of the victims would have had any relevance to his case. See N.C. Gen. Stat. § 14-27.7(a) (describing crime of sex offense - parental role and providing consent no defense); State v. Anthony, 133 N.C. App. 573, 575-79 (1999) (holding consent does not constitute defense to crime of statutory rape of person aged 13, 14, or 15 under § 14-27.7A(a)); State v. Hunt, 221 N.C. App. 489, 496 n.3 (2012) (recognizing consent no defense to taking indecent liberties with child under age of 16 under N.C. Gen. Stat. § 14-202.1). Indeed, the trial court granted the state's motion in limine under Rule 412 of the North Carolina Rules of Evidence (rape shield law), which deems evidence of the sexual behavior of the victims irrelevant in a rape or sex offense criminal trial except in four narrow circumstances which Petitioner did not show (and has not shown) apply to his case. (See Docket Entry 5-12 at 5-9.)[4]

---

[4] Following an in camera voir dire examination of one of the victims regarding previous instances of sexual abuse she had experienced, the trial court modified its earlier ruling on the Rule 412 motion in limine to allow Petitioner's trial counsel to inquire of the SANE nurse if the victim's
(continued...)

Moreover, Petitioner has not identified which "reports" show that the victims had made prior rape or sexual abuse allegations against other individuals, or indicated whether anyone investigated those alleged prior allegations (and, more significantly, whether any such allegations proved false); nor has Petitioner explained how those prior accusations would have had any impact on the outcome of his case. (Docket Entry 1 at 10, 11, 13; Docket Entry 12 at 11-22.) Similarly, Petitioner has made no attempt to show what contribution defense experts would have made to any challenge to the testimony of the SANE nurse and SBI experts, beyond what his trial counsel elicited on his cross-examination (and recross-examination) of those individuals. (Id.; see also Docket Entry 5-12 at 169-94 (cross-examination of SANE nurse), 200-02 (recross-examination of SANE nurse), 308-09 (cross-examination of SBI body

---

[4](...continued)
allegations of sexual abuse occurring in the summer of 2008, a few months prior to the victim's allegations against Petitioner, would have changed the SANE nurse's opinion. (See Docket Entry 5-12 at 61-84.) On direct and cross-examination, the SANE nurse testified that she asked the victim in question, at the time of examination, whether the victim had engaged in any consensual sexual intercourse in the recent past and that the victim had identified only abuse from a foster father "years ago." (Id. at 161-62, 192-93 (emphasis added).) The record does not indicate that the state or Petitioner's counsel actually asked the SANE nurse whether the victim's allegations of sexual abuse occurring in the summer of 2008 would have changed the SANE nurse's opinion. (See id. at 145-202.) However, the SANE nurse did clarify the time frame of relevancy for prior sexual activity: "What I'm looking for is I don't want anything with[in] the past two weeks that could potentially contaminate my findings." (Id. at 193 (emphasis added).) Furthermore, with regard to vaginal tears, the SANE nurse explained that the vaginal "area is highly vascular and that most injuries heal within a 24 hour period," and that she did not see any evidence of "granulation" or healing on the victim's tear. (Id. at 192 (emphasis added.) Thus, the record demonstrates that Petitioner's counsel pursued the matter of one of the victim's prior allegations of sexual abuse to the extent that such allegations bore any relevance to Petitioner's case. Moreover, the SANE nurse's testimony and the trial court's rulings on the Rule 412 motion in limine make clear the futility of any further attempt to pursue questioning related to the victim's prior allegations of sexual abuse.

fluids analyst), 322-28 (cross-examination of SBI DNA analyst), 330 (recross-examination of SBI DNA analyst).)[5]

Thus, Petitioner's unsupported and speculative assertions about evidence and defense theories his trial counsel neglected to develop fail to entitle him to habeas relief.  See, e.g., Cearley v. Perry, 1:09CV397, 2014 WL 2607153, at *7 (M.D.N.C. Jun. 11, 2014) (unpublished) (rejecting as "entirely conclusory" ineffective assistance claim premised on trial counsel's alleged failure to gather and present evidence, including expert testimony, where "the related 'Supporting Facts' section makes no reference to any expert witness testimony Petitioner's trial counsel purportedly should have presented"), recommendation adopted, 2014 WL 4809233 (M.D.N.C. Sept. 26, 2014) (unpublished), appeal dismissed, No. 14-7433, 2015 WL 1428194 (4th Cir. Mar. 31, 2015) (unpublished); Powell v. Shanahan, No. 3:13CV496FDW, 2014 WL 1464397, at *8 (W.D.N.C. Apr.

_____

[5] The medical articles Petitioner moved to add to his response in opposition to Respondent's summary judgment motion do not aid his argument regarding his trial counsel's failure to retain defense experts or develop an alternative explanation for the findings of the SANE nurse and the SBI experts. (See Docket Entry 13 at 4-14.)  The first article, entitled "Appearance of the genitalia in girls selected for nonabuse: review of hymenal morphology and nonspecific findings" (id. at 4-5), concluded that "nonspecific genital findings" (identified as "peri-hymenal bands, longitudinal intravaginal ridges, hymenal tags, hymenal bumps/mounds, linea vestibularis, ventral hymenal cleft/notch . . ., failure of midline fusion, hymenal opening size > 4mm, erythema, change in vascularity, labial adhesions, posterior hymenal notch/cleft (partial), posterior notch/cleft (complete), and posterior hymenal concavity or angularity") commonly occurred among girls who had not been sexually abused (id. at 4 (percentages omitted)).  The second article, entitled "Medical Considerations in the Diagnosis of Child Sexual Abuse, posits that horizontal hymen size, vaginal rashes and redness, anal-genital warts, and reflex anal dilatation ("RAD"), do not constitute accurate predictors of child sexual abuse.  (Id. at 6-14.) However, the SANE nurse in this case testified that the victim had a 2.24 millimeter tear at the bottom of her vagina consistent with a "penetrating" trauma and the victim's allegations of sexual assault.  (Docket Entry 5-12 at 159-60, 164.)  Neither article addresses (much less challenges or discredits) the use of vaginal tears as a method of detecting sexual abuse.  (See Docket Entry 13 at 4-14.)

15, 2014) (unpublished) ("[T]o the extent [the][p]etitioner bases his ineffective assistance of counsel claim on his attorney's alleged failure to investigate, [he] has presented . . . unsupported and conclusory allegations, which are insufficient to warrant either an evidentiary hearing or habeas relief." (citing Nickerson, 971 F.2d at 1136)); Talbert v. Clarke, No. 2:13CV199, 2014 WL 644393, at *16 (E.D. Va. Feb. 18, 2014) (unpublished) ("The petition fails to comply with the requirement of Rule 2(c) of the Rules Governing Section 2254 Cases in District Courts that the [p]etitioner 'state the facts supporting each ground.' Rule 2(c) is more demanding than the notice pleading requirement of Fed. R. Civ. P. 8(a). Mayle v. Felix, 545 U.S. 644, 655 (2005). '[I]n order to substantially comply with the Section 2254 Rule 2(c), a petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified. These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review.' Bullard v. Chavis, 153 F.3d 719, 1998 WL 480727, *2 (4th Cir. Aug. 6, 1998) (unpublished table decision) (quoting Adams v. Armontrout, 897 F.2d 332, 333 (8th Cir. 1990))."); Rice v. Cooper, No. 3:12CV7RJC, 2012 WL 4321320, at *10 (W.D.N.C. Sept. 20, 2012) (unpublished) ("In Ground 6, [the][p]etitioner contends that his trial attorney did not want to spend limited state resources to hire an expert to testify about scientific evidence that would clear [him] . . . . [He] is not entitled to relief on Ground 6. First, Ground 6 is wholly

conclusory and unsupported.  That is, [the][p]etitioner does not explain what evidence an expert would have testified about that would have exculpated [him] . . . ." (internal brackets and quotation marks omitted) (citing <u>Nickerson</u>, 971 F.2d at 1136)).

The remainder of Petitioner's ineffective assistance of trial counsel subcontentions involve, as detailed above, his trial counsel's alleged failure to object to the inadmissible testimony of a social worker, a police department investigator, the SANE nurse, and one of the victims, as well as failure to object to "argumentative" direct examination of Petitioner's wife. (Docket Entry 1 at 6-10; <u>see also</u> Docket Entry 12 at 8-11.)  Even considered cumulatively, those alleged errors do not establish constitutionally ineffective assistance by Petitioner's trial counsel.

In order to prove ineffective assistance of trial counsel, Petitioner must satisfy the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  More specifically, Petitioner must show that (1) his counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced Petitioner, i.e., a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have changed.  <u>See</u> <u>id.</u> at 678-88, 694. Further, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Id.</u> at 690.

Here, in light of the strong to overwhelming evidence against Petitioner, he cannot show prejudice resulting from his trial counsel's allegedly deficient performance, even considering such alleged errors cumulatively. The two minor victims, who did not know each other prior to Petitioner's trial on the underlying charges (see Docket Entry 5-12 at 46, 389), each testified in detail about multiple occasions on which Petitioner sexually assaulted them (id. at 48-58, 85-102, 387-96, 400). The SANE nurse testified that one of the victims had a 2.24 millimeter tear at the bottom of her vagina consistent with a "penetrating" trauma and the victim's allegations of sexual assault. (Id. at 159-60, 164.) The SBI bodily fluid analyst testified that a cutting from a washcloth, which one of the victims testified Petitioner used to wipe himself and her after ejaculation (see id. at 90, 102), tested positive for the presence of sperm (id. at 305-09). In turn, an SBI DNA analyst testified that the sperm fraction of the washcloth cutting contained DNA from the Petitioner, and that the non-sperm fraction of the cutting contained DNA from the victim in question. (Id. at 316-19.) Notably, that analyst opined that the probability of those DNA profiles matching individuals other than Petitioner and the victim "[wa]s one in greater than one trillion." (Id. at 319, 320.)

Under these circumstances, no reasonable probability of a different outcome for Petitioner's trial existed. See United States v. Flute, 363 F.3d 676, 678 (8th Cir. 2004) ("The strength of the properly admitted evidence was great. Two [minor] victims

testified directly about how [the defendant] had victimized them, and there was additional medical evidence consistent with the abuse."); Slate v. Vargo, No. 1:12cv1477 (CMH/TCB), 2014 WL 3378627, at *6 (E.D. Va. July 8, 2014) (unpublished) (finding no prejudice where "no reasonable probability exists that the outcome at trial would have differed had [the petitioner's proposed] evidence been introduced.  The witnesses were certain that Slate was the perpetrator of the offense, and the scientific evidence conclusively established that 'the probability of randomly selecting an unknown individual with a DNA profile matching [that of Slate's recovered] . . . from the pistol is one in greater than 6.5 billion'"); Juniper v. Pearson, No. 3:11-cv-00746, 2013 WL 1333513, at *44 (E.D. Va. March 29, 2013) (unpublished) (holding that the petitioner could not "overcome the very high threshold on prejudice, for nothing that counsel did or failed to do can alter the unmistakable forensic evidence against [the petitioner].  The simple fact that his thumbprint and DNA were discovered on the knife with which [the victim] was stabbed . . .  sufficiently deflects any collateral attack based on ineffective assistance of counsel"), vacated in part on other grounds sub nom. Juniper v. Davis, 737 F.3d 288 (4th Cir. 2013); Hernandez v. Pliler, No. 03-2368PJH, 2004 WL 2047570, at *12 (N.D. Cal. Sept. 14, 2004) (unpublished) ("[T]he evidence in this case was not 'thin.'  Instead, the prosecution presented a strong case against [the defendant], including physical evidence which corroborated [the minor victim's] accusation of molestation."), aff'd, No. 04-17131,

2006 WL 377136 (9th Cir. Feb. 17, 2006) (unpublished); Denney v. Nelson, No. 01-3406-DES, 2002 WL 731698, at *6 (D. Kan. Apr. 18, 2002) (unpublished) (describing "weight of evidence against [the] petitioner" as "overwhelming" where "jury heard graphic testimony from two different victims regarding two separate instances of sodomy and sexual battery perpetrated by [the] petitioner").

Accordingly, because Petitioner cannot establish that his trial counsel's alleged errors prejudiced him, his ineffective assistance claims fail. See Strickland, 466 U.S. at 697 ("[T]here is no reason . . . to address both components of the [performance and prejudice] inquiry if the defendant makes an insufficient showing on one."). In sum, Grounds One and Two do not entitle Petitioner to habeas relief.

II. Ground Three

In Petitioner's third ground for relief, he contends that the trial court violated the Confrontation Clause of the United States Constitution by allowing (1) a social worker to testify that Petitioner's son told her that he knew one of the victims had told his aunt that Petitioner had raped the victim because "that was why [the victim] was being punished"; and (2) one of the victims to testify that Petitioner's sister said she knew Petitioner "was probably having sex with the [victim], because . . . Petitioner had had sex with his sister's friends in the past." (Docket Entry 1 at 14, 16; see also Docket Entry 12 at 22.) That claim lacks merit.

As Respondent correctly argues, procedural default bars this claim, because Petitioner failed to object to the admission of this

evidence at trial, resulting in a plain error review of these issues on direct appeal. (See Docket Entry 5 at 13; see also Docket Entry 5-2.) Plain error review in an appellate court triggers the procedural bar for failing to object at trial and precludes federal habeas review. Daniels v. Lee, 316 F.3d 477, 487-88 (4th Cir. 2003).

In light of that procedural bar, Petitioner must demonstrate either that cause for and prejudice from his procedural default exists or that the refusal to address the defaulted claim will result in a miscarriage of justice. Longworth v. Ozmint, 377 F.3d 437, 447-48 (4th Cir. 2004). In his MAR and Ground One of the instant Petition, Petitioner has alleged ineffective assistance of trial counsel for failing to object to the testimony in question (see Docket Entry 1-3 at 24, 27; Docket Entry 1 at 7, 10), which can constitute cause excusing procedural default, see Cole v. Branker, 328 F. App'x 149, 158 (4th Cir. 2008) (recognizing that "[t]he Supreme Court has 'acknowledged that in certain circumstances counsel's ineffectiveness in failing properly to preserve [a] claim for review in state court will suffice' to establish cause for a procedural default" (citing Edwards v. Carpenter, 529 U.S. 446, 451 (2000))). However, as discussed above, because the strength of the evidence against Petitioner precludes him from demonstrating the requisite prejudice arising from this alleged ineffective assistance, such a claim fails on its merits and thus cannot constitute cause sufficient to excuse his procedural default. See Dunaway v. Director of Va. Dep't of

Corrs., 414 F. App'x 560, 562 (4th Cir. 2012) ("Because his ineffective assistance claim fails, [the petitioner] has also failed to show cause and prejudice excusing the procedural default.").

III. Ground Four

Finally, Petitioner alleges that his appellate counsel provided ineffective assistance by failing to raise on direct appeal all of the ineffective assistance of trial counsel allegations he asserts in Grounds One and Two of the instant Petition. (Docket Entry 1 at 18; Docket Entry 12 at 22-23.) According to Petitioner, his appellate counsel's failure to raise these ineffective assistance claims resulted in the North Carolina Court of Appeals reviewing the issues for plain error and deprived him of the opportunity to have the Court of Appeals consider the cumulative effect of all of his trial counsel's alleged errors, see Burch, 2011 WL 3891031, at *11 (observing that "'the plain error rule may not be applied on a cumulative basis, but rather a defendant must show that each individual error rises to the level of plain error'" (citing State v. Dean, 196 N.C. App. 180, 194 674 S.E.2d 453, 463 (2009)). (See Docket Entry 1 at 18; Docket Entry 12 at 22-23.)

The Strickland standard applies with equal force to claims of ineffective assistance of appellate counsel. Evitts v. Lucey, 469 U.S. 387, 396 (1985) ("A first appeal as of right therefore is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney.") Here,

Petitioner's claim that his appellate counsel failed him lacks merit, because Petitioner cannot meet the prejudice prong of Strickland. Even if the Court of Appeals had considered the cumulative effect of all of Petitioner's allegations of ineffective assistance of trial counsel, no reasonable probability of a different outcome exists due to the strong to overwhelming nature of the evidence against Petitioner as outlined above.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 4) be granted, that the Petition (Docket Entry 1) be denied, and that this action be dismissed without issuance of a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

April 14, 2015